UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Christopher S. Johnson, #350430 )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>County of Greenville, South Carolina; )<br>Craig Hawkins; Joseph Parrish; Claude )<br>"C.J." Todd; Laura Campbell; Johnny )<br>Brown; James Cannon; Joyce K. Monts; )<br>Jason Bash, individually and in their )<br>Official capacities, )<br>)<br>Defendants. )<br>_____ ) | Civil Action No. 6:13-cv-01652-JMC-KDW<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff, proceeding pro se, filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights by falsely arresting him and assaulting him during his arrest. This matter is before the court on Defendant Jason Bash's Motion for Summary Judgment, ECF No. 106, filed on January 29, 2015, and the remaining Defendants' Motion for Summary Judgment, ECF No. 109, filed on January 30, 2015. The court entered two *Roseboro* Orders,[1] advising Plaintiff of the importance of such motions and of the need for him to file adequate responses. ECF Nos. 107, 110. Plaintiff filed a Response in Opposition to Defendants' Motions on March 13, 2015. ECF No. 122. Additionally, Plaintiff filed a Summary Judgment Motion on February 5, 2015, ECF No. 113, and Defendants responded to Plaintiff's Motion. ECF Nos. 117, 118. Therefore, this matter is now ripe for review. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28

---

[1] The court entered *"Roseboro* orders*"* in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because these Motions are dispositive, a Report and Recommendation is entered for the court's review.

I.      Background

This lawsuit arises from a police "raid" on a hotel room at La Quinta Inn in Greenville, South Carolina on October 7, 2010. ECF No. 1. Plaintiff alleges that the raid occurred while Defendants were conducting a search for Joyce Evelyn Edwards ("Edwards"), allegedly a non-violent parole violator. *Id.* at 6. According to Plaintiff, Defendant Bash was informed that Edwards was staying in a room "with an unknown male" and that a large quantity of narcotics was in the room. *Id.* Plaintiff alleges that Defendants Hawkins, Brown, Campbell, Todd, Parrish, Bash, and Cannon took positions outside of Plaintiff's hotel room to conduct surveillance in an effort to apprehend Edwards. *Id.* Plaintiff asserts that Defendants Parrish and Todd "claim to have witnessed Edwards enter/exit Plaintiff's room. . . two times." *Id.* at 7. While officers were positioned outside his room, Plaintiff alleges he attempted to exit the hotel room for "snacks" when "he was confronted by multiple armed subjects yelling various phrases, slurs, and commands: 'Show me your hands nigger!'; 'Greenville County Sheriff's Office'; 'Get your ass on the bed boy! Get down, get down!'; Etc." *Id.* at 7-8.

Plaintiff maintains that he "allowed himself to be handcuffed and 'draped' over a hotel bed (said bed being one of two king-sized beds in the room), knees on the ground, facedown on the mattress." *Id.* at 8. While Edwards was struggling with officers, Plaintiff maintains that officers reviewed his identification, then threw it on the bed near Plaintiff's head. *Id.* While Edwards was being taken into custody, Plaintiff alleges that some of the agents began searching through his possessions, and he demanded to know why he was being detained. *Id.* at 8-9. In response, agents allegedly told Plaintiff "it was part of a narcotics investigation." *Id.* at 9.

2

Plaintiff maintains that Edwards' purse contents "yielded a syringe (unused) and a few small, plastic 'baggies' (also unused). These items were 'field-tested' on the scene and yielded 'negative' results." *Id.* Plaintiff also maintains that after a search of a zipped backpack "produced a set of digital scales, Plaintiff was <u>again</u> searched, without his consent, this second search yielding a prescription bottle containing a small quantity of both heroin and methamphetamine. The prescription bottle was closed and sealed, and at no time did Plaintiff give consent to search the closed and sealed prescription bottle." *Id.* (emphasis in original). Thereafter, Plaintiff was formally arrested and "given his Miranda warnings." *Id.* at 9-10.

After his arrest, Plaintiff alleges that agents continued to question him even though he "<u>clearly</u> and <u>plainly</u> invoked his privileges, and declared his wishes to remain silent and only speak in the presence, and with benefit, of counsel." *Id.* at 10 (emphasis in original). Plaintiff accepted full responsibility for all contents in the room, including items found on Edwards after "a crying, shuddering Ms. Edwards was paraded in front of [him]." *Id.* Plaintiff alleges that "this agreement was stipulated upon the understanding that Ms. Edwards would not face charges related to Plaintiff's, and that both the Plaintiff and Ms. Edwards would be allowed to smoke cigarettes until they were transported to jail." Plaintiff alleges that he was then "double-cuffed." *Id.*

Plaintiff alleges that at this point, several agents "conducted a meeting, within view and earshot of Plaintiff, in which they conspired as to exactly what 'approach' to use to satisfy the Magistrate's 'detached' inquiry." *Id.* at 10-11. Plaintiff maintains that the agents agreed to use a "plain view" claim, and "after both Ms. Edwards and Plaintiff were relocated outdoors, the agents set about 'staging' the 'crime scene' and photographing it." *Id.* at 11. Further, Plaintiff alleges that "once the room had been 'prepared,' the K-9 officer, Defendant Cannon, was

brought into the room, with his dog ('Nero'), ostensibly to check for hidden contraband, but actually to 'witness' the now 'staged' evidence." *Id.* Thereafter, Plaintiff alleges that Defendants Todd and Campbell used perjured testimony to secure a search warrant from the magistrate court. *Id.* Then, Plaintiff maintains that "a final search was performed subsequent to the warrant, but no contraband was seized pursuant to it." *Id.*

Thereafter, Plaintiff asserts that he and Edwards were transported to the Greenville County Detention Center ("GCDC") and arraigned on charges of trafficking heroin and possession of methamphetamine with intent to distribute ("PWID"). *Id.* at 11-12. Plaintiff alleges that agents from the Greenville County Solicitor's Office and the Greer County Solicitor's Office initiated an unlawful prosecution "they knew to be predicated on deceit, fraud, coercion, racism, contrived and manipulated evidence, and perjury." *Id.* at 12. After spending 18 months incarcerated in the GCDC, on April 9, 2012, Plaintiff maintains that he "was found guilty" of both the trafficking and the PWID charges. *Id.* Plaintiff asserts he was ordered to serve concurrent sentences of 15 years for both of the charges. *Id.*

Initially, Plaintiff brought claims for conspiracy, false arrest, several constitutional rights violations, excessive force, and malicious prosecution. *Id.* at 13-16. Furthermore, he sought $10 million in compensatory damages, $5 million in punitive damages, a trial by a three-judge panel, costs and any additional relief the court deems just, proper, and equitable. *Id.* at 18. After initial review, the undersigned recommended dismissing Joyce K. Monts, the solicitor in Plaintiff's criminal case, as a defendant based on prosecutorial immunity. *See* ECF No. 14 at 6. Additionally, the undersigned recommended summary dismissal of Plaintiff's causes of action "relating to the prosecution of his criminal action subsequent to Defendants' obtaining a warrant . . . . because no right of action has accrued." *Id.* at 5 (citing *Heck v. Humphrey*, 512 U.S. 477

4

(1997)). Plaintiff's excessive force/assault allegation from March 17, 2011, was recommended for dismissal without prejudice. *Id.* at 7. Thus, Plaintiff's claims now being considered include a cause of action for false arrest for the time period between his arrest and the time a warrant was obtained[2] and his claim for excessive force during his arrest. *Id.* Over Plaintiff's objections, the district court accepted the undersigned's recommendations. ECF No. 85. The motions herein address Plaintiff's remaining causes of action for false arrest and excessive force.[3]

II.     Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his

---

[2] In his Complaint, Plaintiff admitted that he was "found guilty" of both charges against him. *See* ECF No. 1 at 12. However, the Fourth Circuit Court of Appeals has not interpreted "*Heck* to compel a conclusion that all claims of unconstitutional seizure accrue only upon a termination of the criminal proceedings favorable to the § 1983 plaintiff." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 182 (4th Cir. 1996). Therefore, Plaintiff's cause of action for false arrest based on an alleged "unconstitutional warrantless arrest" was allowed to proceed. *See id.* at 183.

[3] In an Amended Complaint, Plaintiff corrected a "faulty allegation" from his initial Complaint. *See* ECF No. 37. There he alleges to have "improperly implicated the Fifteenth Amendment, versus the Fourteenth Amendment, which guarantees a right to 'due process.' Accordingly, Plaintiff hereby amends paragraph 44 to correctly implicate the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution." Additionally, Plaintiff sought leave to add a party. *Id.* However, no additional party was mentioned in Plaintiff's Amended Complaint. *See id.*

pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 251. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

   III.   Analysis

Two sets of Defendants and Plaintiff filed Summary Judgment Motions. The undersigned will address each Motion in turn, beginning with Defendant Bash's Motion for Summary Judgment.

   A.  Defendant Bash's Summary Judgment Motion, ECF No. 106.

      1.  False Arrest (Argument II)

Defendant Bash asserts Plaintiff's cause of action for false arrest fails as a matter of law because there was probable cause to arrest Plaintiff. ECF No. 106-1 at 3-4. Furthermore, Defendant Bash maintains that Plaintiff's false arrest claim fails because Plaintiff's guilty pleas conclusively establishes that Plaintiff's arrest was valid. *Id.* at 4. The undersigned agrees.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004). Probable cause exists if the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person . . . . in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979). "The validity of

the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36. "In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters,* 81 F.3d 429, 434 (4th Cir. 1996). "Probable cause requires more than 'bare suspicion' but requires less than evidence necessary to convict." *Porterfield v. Lott,* 156 F.3d 563, 569 (4th Cir. 1998) (internal citations omitted). Probable cause will be found when "the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." *Wadkins v. Arnold,* 214 F.3d 535, 539 (4th Cir. 2000). "'Whether probable cause exists in a particular situation . . . always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *Rogers v. Pendleton,* 249 F.3d 279, 290 (4th Cir. 2001) (quoting *Pritchett v. Alford,* 973 F.2d 307, 314 (4th Cir. 1992)). A court's inquiry should be made based on the information possessed by the officer at the time of the arrest that was then reasonably available to him at the time of arrest, and "in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions." *Pritchett,* 973 F.2d at 312.

Even under Plaintiff's version of the facts, he was arrested after Defendant officers found the following items: a syringe and small plastic baggies on Edwards, digital scales in a backpack, and a pill bottle containing heroine and methamphetamine in Plaintiff's possession. ECF No. 1 at 9. Additionally, Defendant officers had an arrest warrant for Edwards, *see* ECF Nos. 109-2, 109-5, 109-6, and were in pursuit of her when they came into contact with Plaintiff, who was with

Edwards in a hotel room. Therefore, probable cause existed to arrest Plaintiff without an arrest warrant. *See Devenpeck,* 543 U.S. at 152; *DeFillippo,* 443 U.S. at 37.

Throughout his Complaint and in his Response to Summary Judgment, Plaintiff contends that Defendant officers found evidence, including drugs, without a search warrant and without his consent. ECF Nos. 1, 122. However, even assuming the validity of Plaintiff's arguments, these exclusionary rules or "fruit of the poisonous tree" arguments are applicable in the criminal context, rather than in civil actions pursuant to § 1983. *See e.g.*, *Ware v. James City Cnty., Virginia*, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009) *aff'd sub nom. Ware v. James City Cnty., Va.*, 380 F. App'x 274 (4th Cir. 2010) ("This argument fails because 'the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.'" (citing *Townes v. City of New York,* 176 F.3d 138, 148–49 (2d Cir. 1999)); *Vaughn v. Whitfield*, No. 8:12-CV-2405-RMG, 2013 WL 5144751, at *19 (D.S.C. Sept. 12, 2013) (internal citations omitted) ("[E]ven if Defendants' conduct violated Plaintiffs Fourth Amendment right, Defendants are not automatically liable under § 1983 or in tort for their subsequent decisions to place Plaintiff under arrest . . . . there is no fruit of the poisonous tree doctrine in the § 1983 context that makes Defendants necessarily liable for a seizure that came after a potentially unlawful search. The fruit of the poisonous tree doctrine is merely an extension of the exclusionary rule, and as such generally operates 'only in criminal trials.'"). Accordingly, the undersigned recommends dismissing Plaintiff's false arrest cause of action as to all Defendants.

### 2. False Arrest and Excessive Force Claims (Arguments I and III)

Defendant Bash maintains that Plaintiff's causes of action against him for false arrest and excessive force fail as a matter of law because Defendant Bash was not involved in taking Plaintiff into custody. ECF No. 106-1 at 4-5. Additionally, Defendant Bash argues that Plaintiff

has failed to present evidence that Defendant Bash in any way participated in using excessive force, and Plaintiff has failed to present any evidence of an injury incurred as a result of the purported force used against him. *Id.* at 5.

Plaintiff concedes that Defendant Bash was not the arresting officer. ECF No. 122 at 4. However, Plaintiff maintains that Defendant Bash encouraged unlawful behavior. *Id.* Additionally, Plaintiff's argument vacillates between a cause of action for excessive force in violation of Plaintiff's constitutional rights, a cause of action for civil assault, and the "crime of assault." *See id.* at 4-9. Simply put, Plaintiff maintains that because Defendant Bash participated in the raid, he cannot escape liability. The undersigned disagrees.

Defendant Bash correctly states that whether law enforcement officers used excessive force when making an arrest is analyzed under the Fourth Amendment and its "reasonableness" standard. *See Graham v. Connor,* 490 U.S. 386, 395 (1989). The *Graham* Court discusses seizure of a "free citizen" in the context of an arrest or investigatory stop and holds that the protections of the Fourth Amendment guarantee citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. *Id.* at 394. Furthermore, the Court held that "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

The standard of review is an objective one, and the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force. *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001). "[T]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable

9

officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (internal citations omitted). The *Graham* Court instructed that a reviewing court must make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." 490 U.S. at 397. "The court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection." *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (citations omitted).

Other than Plaintiff's allegation that Defendant Bash acted in concert with the remaining Defendants, Plaintiff fails to allege that Defendant Bash used any force on him. Therefore, even under Plaintiff's version of the facts, no allegations or evidence demonstrate that this Defendant used an unjustified amount of force on Plaintiff during his arrest. Accordingly, the undersigned recommends that the court grant Defendant Bash's Motion for Summary Judgment and dismiss him as a Defendant.

### 3. Qualified Immunity (Argument IV)

Defendant Bash also asserts that he is entitled to qualified immunity on Plaintiff's claim for excessive force. ECF No. 106-1 at 5-6. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. 457 U.S. 800 (1982). That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct

violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

Based on the analysis of the facts presented in the sections above and considering the facts in the most favorable light to the Plaintiff, the undersigned recommends granting Defendant Bash qualified immunity. The record before the court shows that this Defendant performed the discretionary functions of his respective official duties in an objectively reasonable fashion. Defendant did not transgress any statutory or constitutional rights of Plaintiff of which he was aware in the exercise of his respective professional judgment. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendant Bash be granted qualified immunity.

### B. Remaining Defendants' Summary Judgment Motion, ECF No. 109

Initially, the remaining Defendants argue that Plaintiff has brought suit against seven police officers; he fails to associate particular officers to specific alleged constitutional violations, and instead largely directs all claims to Defendants as a whole. ECF No. 109-1 at 6-7. Though the undersigned recognizes Plaintiff's general assertions against all Defendants, the

undersigned will address whether Plaintiff's causes of action survive as a matter of law rather than determining which Defendants should or should not be named in this matter.

1. False Arrest (Argument II)

Defendants assert Plaintiff's cause of action for false arrest fails as a matter of law because the officers had probable cause to arrest Plaintiff. ECF No. 109-1 at 7-9. Additionally, Defendants maintain that Plaintiff's false arrest claim fails because Plaintiff's guilty pleas conclusively establish that Plaintiff's arrest was valid. *Id.* The undersigned agrees. *Id.* at 9-10. Furthermore, Defendants maintain that not all of the Greenville County Defendants were involved in Plaintiff's arrest. *Id.* at 10-11. The undersigned has already addressed Plaintiff's cause of action for false arrest above. *See supra* section (A)(1). Therefore, based on the reasoning in the above recommendation, the undersigned also recommends dismissing Plaintiff's false arrest cause of action against the remaining Defendants.

2. Excessive Force (Argument III)

Defendants argue that summary judgment should be granted on Plaintiff's excessive force claim because the amount of force exercised by Officer Hawkins was reasonable under the circumstances. ECF No. 109-1 at 11-14. Furthermore, Defendants maintain that Plaintiff has failed to present any evidence demonstrating that Defendants Parrish, Todd, Campbell, Brown, and Cannon used any acts of force against Plaintiff. *Id.* at 13. Additionally, Defendants contend that Plaintiff has failed to demonstrate that he suffered injuries during his arrest or the encounter in room 107 at La Quinta Inn. *Id.* In his 52-page Response to Defendants' Motion, Plaintiff mainly discusses caselaw and the elements of the causes of action he has alleged. *See* ECF No. 122.

In his Complaint, Plaintiff asserts the following facts that could give rise to an excessive force violation: Plaintiff's confrontation by officers when he attempted to exit the La Quinta Inn hotel room; the use of "phrases" and "slurs" shouted at him upon his exit; officer's use of handcuffs on Plaintiff as well as Plaintiff being "'draped' over a hotel bed (said bed being one of two king-sized beds in the room), knees on the ground, facedown on the mattress;" and officer's use of a "double-cuff" on Plaintiff. The undersigned finds that the amount of force alleged was reasonable under the circumstances.

As previously discussed, *Graham v. Connor*, 490 U.S. at 395, establishes that claims against law enforcement for excessive force in the course of an arrest, investigatory stop or other "seizure" of a person are properly analyzed under the Fourth Amendment's objective "reasonableness" standard. There, the Supreme Court recognized "that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. Further, the Court held that there is not a precise mechanical application of the standard, but "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Additionally, the Court instructs that an officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. *Id.* at 396-97. Therefore, guided by the authority in *Graham*, the undersigned must examine the totality of

the circumstances and the uncontested facts, viewed in the light most favorable to Plaintiff, to determine whether Defendants' use of force was reasonable.

It is undisputed that Plaintiff was found in a room with Edwards, and all evidence before the court demonstrates that Edwards was a wanted fugitive. *See* ECF Nos. 109-2, 109-3, 109-5, 109-6. Furthermore, the evidence demonstrates that Defendant Hawkins reasonably perceived that Edwards and Plaintiff posed a threat to officer safety and the public's safety. *See* ECF No. 109-2, 123-4. Moreover, evidence demonstrates that the amount of force used was reasonable in order to apprehend Edwards, and ultimately Plaintiff. In an affidavit submitted with Defendants*'* Motion, Defendant Hawkins avers that he "un-holstered [his] service weapon [] based on [his] experience and training, that Jocelyn Edwards, who had been evading law enforcement's efforts to arrest her on two separate warrants, one of which was from out-of-state, would react badly when she learned that police were outside her door." Hawkins Aff. ¶ 7, ECF No. 109-2. Additionally, Defendant Hawkins avers that he *"*identified [himself to Plaintiff] as an officer, pointed [his] service weapon at the Plaintiff, and directed him into the room and onto a bed." *Id.* ¶ 8. Defendant Hawkins further avers that "[r]elegating the Plaintiff and the fugitive to this room minimized the chance that a violent altercation would occur in the motel's common area, jeopardizing the safety of motel patrons and members of the public who might happen to be in the area." *Id.* Furthermore, Defendant Hawkins asserts that he handcuffed Plaintiff in order to "maintain the status quo." *Id.* ¶ 9. According to Defendant Hawkins, Plaintiff indicated that he was not injured once order was restored in the motel room. *Id.* ¶ 10.

Under the objective reasonableness test, the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force. The officer's use, or presentment of a gun, in

14

this situation was reasonable. *See Turmon v. Jordan*, 405 F.3d 202, 207 (4th Cir. 2005) (citing *United States v. Sinclair,* 983 F.2d 598, 602 (4th Cir. 1993) ("'[A]pproaching a suspect with [a] drawn weapon[ ] is an extraordinary measure,' but this level of intrusion can be justified 'as a reasonable means of neutralizing potential dangers to police and innocent bystanders.'"); *United States v. Seni,* 662 F.2d 277, 283 (4th Cir. 1981) (finding that drawing a gun was a reasonable safety precaution where officers have reasonable suspicion of criminal activity). Additionally, the officer's use of handcuffs to detain Plaintiff was also reasonable under the circumstances. *See e.g, Redding v. Boulware*, 501 F. App'x 238 (4th Cir. 2012) (holding that the law enforcement officers did not use excessive force in putting handcuffs on the arrestee); *Young v. Prince George's Cnty., Maryland*, 355 F.3d 751, 755 (4th Cir. 2004) (internal citation omitted) ("We have also held that an officer may handcuff a suspect when reasonably necessary to maintain the status quo and protect officer safety during an investigative stop."); *Brown v. Gilmore*, 278 F.3d 362, 369-70 (4th Cir. 2002) ("If courts refused to permit the use of proportionate force in these circumstances, we would be inviting any suspect who is unhappy about an arrest to resist that arrest in the hopes that the officers will simply desist rather than risk liability."). Though Plaintiff does not elaborate on his use of the term "double-cuffed," the undersigned finds that Plaintiff has still failed to present evidence that officers acted with an unreasonable amount of force given the totality of the circumstances.                      To the extent Plaintiff brings a cause of action for excessive force based on the officers' threats or slurs, this allegation fails as a matter of law because use of abusive language alone, is not a basis for a civil rights action. *Faltas v. South Carolina*, No. CA 3:11-3077-TLW-SVH, 2012 WL 988105, at *6 (D.S.C. Jan. 27, 2012) *report and recommendation adopted*, No. 3:11-3077-TLW, 2012 WL 988083 (D.S.C. Mar. 22, 2012) *aff'd sub nom. Assa'ad-Faltas v. South Carolina*, 489 F. App'x 720 (4th Cir.

2012). Finally, as mentioned by Defendants, Plaintiff has failed to offer any proof that he suffered an injury because of the excessive force. *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) ("The extent of the plaintiff's injury is also a relevant consideration.").

Therefore, based on the evidence before the court and the case law on use of excessive force, the undersigned recommends that the court grant Defendants' Motion for Summary Judgment regarding Plaintiff's cause of action for excessive force.

### 3. Qualified Immunity (Argument III)

Defendants maintain the court should grant their motion because they are shielded by qualified immunity. ECF No. 109-1 at 14-16. Considering the facts alleged, taken in the light most favorable to Plaintiff, the undersigned agrees. The record before the court shows that Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. As reasoned above, Defendants did not transgress any statutory or constitutional rights of Plaintiff. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendants be granted qualified immunity.

### 4. Municipal Liability (Argument V)

Defendants maintain that the County of Greenville should be granted summary judgment on Plaintiff's claims because § 1983 does not permit a vicarious liability claim. ECF No. 109-1 at 16-17. To the extent Plaintiff named the County of Greenville as a Defendant based on supervisory liability, the undersigned agrees.

"Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990), *overruled in part on*

*other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (citation omitted). To successfully pursue such a theory, Plaintiff must demonstrate that he faced a pervasive and unreasonable risk of harm from a specified source, and that the supervisor's corrective inaction amounted to deliberate indifference or tacit authorization of the offensive practices. *Id.*; *see also Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984).

The undersigned finds that Plaintiff has failed to allege a causal link between any action or inaction on the part of any officer Defendant and the County of Greenville. Therefore, to the extent Plaintiff attempts to rely on the doctrine of supervisory liability to hold the County of Greenville liable on his claims, the undersigned recommends dismissing such cause of action.

5. Official Capacity (Argument VI)

The individual officer Defendants argue that they were acting in their official capacity and are entitled to immunity under the Eleventh Amendment. ECF No. 109-1 at 17.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001). Because the officer Defendants were agents or employees of the County of Greenville when acting in their official capacities, they are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S.

58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A state cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at 663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As arms of the State, Defendants, in their official capacities, are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants in their official capacities be dismissed.

C.  Plaintiff's Motion for Summary Judgment, ECF No. 113

On February 5, 2015, Plaintiff filed a Motion for Summary Judgment. ECF No. 113. Therein, Plaintiff asked the court to grant him summary judgment because Defendants cannot refute any of his claims. ECF No. 113-1 at 1. As discussed in the sections above, Plaintiff's false arrest cause of action fails as a matter of law and no genuine issue of material fact exists regarding whether Defendant officers used an unreasonable amount of force under the circumstances. Accordingly, the undersigned recommends that Plaintiff's Motion for Summary Judgment, ECF No. 113, be denied.

IV.    Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendant Bash's Motion for Summary Judgment, ECF No. 106, and the remaining Defendants' Motion for Summary Judgement, ECF No. 109, be granted, and Plaintiff's Motion for Summary Judgment, ECF No. 113, be denied and this case be dismissed.

IT IS SO RECOMMENDED.

*[Signature: Kaymani D. West]*

March 27, 2015                                                              Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

19