# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| Christopher S. Johnson, #350430, ) | |
| ) | Civil Action No. 6:13-cv-01652-JMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| County of Greenville, South Carolina; ) | |
| Craig Hawkins; Joseph Parrish; Claude ) | |
| "C.J." Todd; Laura Campbell; Johnny ) | |
| Brown; James Cannon; Joyce K. Monts ) | |
| Jason Bash, individually and in their ) | |
| official capacities, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

Christopher S. Johnson ("Plaintiff") filed this *pro se* action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that his constitutional rights were violated when he was falsely arrested and assaulted by Defendants Craig Hawkins ("Hawkins"), Joseph Parrish ("Parrish"), Claude Todd ("Todd"), Laura Campbell ("Campbell"), Johnny Brown ("Brown"), James Cannon ("Cannon"), Joyce K. Monts[1], Jason Bash ("Bash"), and the County of Greenville, South Carolina ("County") (collectively referred to as "Defendants"). (ECF Nos. 1, 37.) This matter is before the court on Motions for Summary Judgment filed by Bash (ECF No. 106), Plaintiff (ECF No. 113), and by the County, Hawkins, Parrish, Todd, Campbell, Brown, and Cannon (collectively "Greenville County Defendants") (ECF No. 109).

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, this matter was referred to United States Magistrate Judge Kaymani D. West for pre-trial handling. On March 27, 2015, the Magistrate Judge issued a Report and Recommendation (ECF No. 124), recommending that the

---

[1] The court dismissed Monts from the action by order entered on October 21, 2014. (ECF No. 85.)

1

court grant Bash's Motion for Summary Judgment (ECF No. 106), grant Greenville County Defendants' Motion for Summary Judgment (ECF No. 109), deny Plaintiff's Motion for Summary Judgment (ECF No. 113), and dismiss the case.

While Plaintiff objects to the Magistrate Judge's Report and Recommendation "in its entirety" (ECF No. 127 at 9), Plaintiff's Objection(s) to the Magistrate Judge's Report and Recommendation ("Objections") specifically address the following issues: (A) the validity of Plaintiff's arrest, (B) the excessive force claim against Bash, (C) the applicability of qualified immunity for any and all Defendants, (D) the applicability of sovereign immunity for any and all Defendants, (E) the false arrest committed by Greenville County Defendants, (F) the use of excessive force by Greenville County Defendants, (G) Hawkins' claim to have been acting in the interest of public and personal safety, and (H) Defendants' use of racial slurs.  (ECF No. 127 at 1–9.)

For the reasons set forth herein, the court **ADOPTS** the Magistrate Judge's Report and Recommendation and **REJECTS** Plaintiff's Objections.  The court hereby **GRANTS** Bash's Motion for Summary Judgment, **GRANTS** Greenville County Defendants' Motion for Summary Judgment, **DENIES** Plaintiff's Motion for Summary Judgment, and **DISMISSES** this action.

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The following relevant facts from the complaint (ECF No. 1) are taken as true only for the purposes of the pending motions.  The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate and incorporates it by reference.  The court references below excerpts from the Report that are pertinent to the analysis of Petitioner's claims:

This lawsuit arises from a police "raid" on a hotel room at La Quinta Inn in Greenville, South Carolina on October 7, 2010.  (ECF No. 1 at 5.)  Plaintiff alleges the raid occurred while Defendants were conducting a search for Joyce Evelyn Edwards ("Edwards"), allegedly a non-violent parole violator wanted by authorities in Pennsylvania.  (*Id.* at 6.)  According to Plaintiff, Defendant Bash was informed that Edwards was staying in a room "with an unknown male" and that a large quantity of narcotics was in the room.  (*Id.*)  Plaintiff alleges that Defendants Hawkins, Brown, Campbell, Todd, Parrish, Bash, and Cannon took positions outside of Plaintiff's hotel room to conduct surveillance in an effort to apprehend Edwards.  (*Id.*)  Plaintiff asserts that Defendants Parish and Todd "claim to have witnessed Edwards enter/exit Plaintiff's room . . . two times." (*Id.* at 7.)  While officers were positioned outside his room, Plaintiff alleges he attempted to exit the hotel room for "snacks" when "he was confronted by multiple armed subjects yelling various phrases, slurs, and commands: 'Show me your hands nigger!'; 'Greenville County Sheriff's Office'; 'Get your ass on the bed boy! Get down, get down!'; Etc."  (*Id.* at 7–8.)

Plaintiff maintains that he "allowed himself to be handcuffed and 'draped' over a hotel bed (said bed being one of two king-sized beds in the room), knees on the ground, facedown on the mattress."  (*Id.* at 8.)  While Edwards was struggling with officers, Plaintiff maintains that officers reviewed his identification, and then threw it on the bed near Plaintiff's head.  (*Id.*)  While Edwards was being taken into custody, Plaintiff alleges that some of the agents began searching through his possessions, and he demanded to know why he was being detained. (*Id.* at 8–9.)  In response, agents allegedly told Plaintiff "it was part of a narcotics investigation."  (*Id.* at 9.)  Plaintiff maintains that Edwards' purse contents "yielded a syringe (unused) and a few small, plastic 'baggies' (also unused). These items were 'field-tested' on the scene and yielded 'negative' results."  (*Id.*) Plaintiff also maintains that after a search of a zipped backpack "produced a set of digital scales, Plaintiff was *again* searched, without his consent, this second search yielding a prescription bottle containing a small amount of both heroin and methamphetamine.  The prescription bottle was closed and sealed, and at no time did Plaintiff give consent to search the closed and sealed prescription bottle." (*Id.*) (emphasis in original).  Thereafter, Plaintiff was formally arrested and "given his Miranda warnings."  (*Id.* at 9–10.)

After his arrest, Plaintiff alleges that agents continued to question him even though he "*clearly* and *plainly* invoked his privileges, and declared his wishes to remain silent and only speak in the presence, and with benefit, of counsel."  (*Id.* at 10.) (emphasis in original).  Plaintiff accepted full responsibility for all contents in the room, including items found on Edwards after "a crying, shuddering Ms. Edwards was paraded in front of [him]."  (*Id.*)  Plaintiff alleges that "this agreement was stipulated upon the understanding that Ms. Edwards would not face charges related to Plaintiff's, and that both the Plaintiff and Ms. Edwards would be allowed to smoke cigarettes until they were transported to jail."

Plaintiff alleges that he was then "double-cuffed."[2] (*Id.*)

Plaintiff alleges at this point, several agents "conducted a meeting, within view and earshot of Plaintiff, in which they *conspired* as to exactly what 'approach' to use to satisfy the Magistrate's 'detached' inquiry." (ECF No. 1 at 10–11.) Plaintiff maintains that the agents agreed to use a "plain view" claim, and "after both Ms. Edwards and Plaintiff were relocated outdoors, the agents set about 'staging' the 'crime scene' and photographing it." (*Id.* at 11.) Further, Plaintiff alleges that "once the room had been 'prepared,' the K-9 officer, Defendant Cannon, was brought into the room, with his dog ('Nero'), ostensibly to check for hidden contraband, but actually to 'witness' the now 'staged' evidence." (*Id.*) Thereafter, Plaintiff alleges that Defendants Todd and Campbell used perjured testimony to secure a search warrant from the magistrate court. (*Id.*) Then, Plaintiff maintains that "a final search was performed subsequent to the warrant, but no contraband was seized pursuant to it." (*Id.*)

Thereafter, Plaintiff asserts that he and Edwards were transported to the Greenville County Detention Center ("GCDC") and arraigned on charges of trafficking heroin and possession of methamphetamine with intent to distribute ("PWID"). (*Id.* at 11–12.) Plaintiff alleged that agents from the Greenville County Solicitor's Office and the Greer County Solicitor's Office initiated an unlawful prosecution "they knew to be predicated on deceit, fraud, coercion, racism, contrived and manipulated evidence, and perjury." (*Id.* at 12.) After spending 18 months incarcerated in the GCDC, on April 9, 2012, Plaintiff maintains that he "was found guilty" of both trafficking and the PWID charges. (*Id.*) Plaintiff asserts he was ordered to serve concurrent sentences of 15 years for both of the charges. (*Id.*)

Initially, Plaintiff brought claims for conspiracy, false arrest, several constitutional rights violations, excessive force, and malicious prosecution. (*Id.* at 13–16.) Furthermore, he sought $10 million in compensatory damages, $5 million in punitive damages, and trial by a three-judge panel, costs and any additional relief the court deems just, proper, and equitable. (*Id.* at 18.) After initial review, the undersigned recommended dismissing Joyce K. Monts, the solicitor in Plaintiff's criminal case, as a defendant based on prosecutorial immunity. (*See* ECF No. 14 at 6.) Additionally, the undersigned recommended summary dismissal of Plaintiff's cause of action "relating to the prosecution of his criminal action subsequent to Defendants' obtaining a warrant . . . because no right of action has accrued." (*Id.* at 5 (citing *Heck v. Humphrey*, 512 U.S. 477 (1997))). Plaintiff's excessive force/assault allegations from March 17, 2011, was recommended for dismissal without prejudice. (*Id.* at 7.) Thus, Plaintiff's claims now being considered include a cause of action for false arrest for the time period

---

[2] In Plaintiff's Objections, he explained that being "double-cuffed" meant to "place a second set of cuffs on him later on, which, in effect, doubled the amount of movement afforded the Plaintiff." (ECF No. 127 at 4.) "One cuff from the respective sets were placed on one of Plaintiff's wrists, with the other two attached to each other." (*Id.*)

>between his arrest and the time a warrant was obtained and his claim for excessive force during his arrest. (*Id.*) Over Plaintiff's objections, the district court accepted the undersigned's recommendations. (ECF No. 85.) The motions herein address Plaintiff's remaining causes of action for false arrest and excessive force.

(ECF No. 124 at 2–5.)

Defendants rely upon their respective previously filed Motions for Summary Judgment and supporting memoranda as to why the court should deny Plaintiff's Objections. (ECF Nos. 129, 130.)

## II.     LEGAL STANDARDS AND ANALYSIS

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Matthews v. Weber*, 423 U.S. 261, 270–71 (1976). This court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation, or recommit the matter with instructions. *See* 28 U.S.C. § 636 (b)(1).

Objections to a Report and Recommendation must specifically identify portions of the Report and the basis for those objections. Fed. R. Civ. P. 72(b). "[I]n the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note). Failure to timely file specific written objections to a Report will result in a waiver of the right to appeal from an Order from the court based upon the Report. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright*

*v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). If the plaintiff fails to properly object because the objections lack the requisite specificity, then *de novo* review by the court is not required.

As Plaintiff is a *pro se* litigant, the court is required to liberally construe his arguments. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). The court addresses those arguments that, under the mandated liberal construction, it has reasonably found to state a claim. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).

Fed. R. Civ. P. 56 mandates the entry of summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." (*Id.* at 248.) The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. (*Id.* at 324.) Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. (*Id.*) Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 251. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v.*

*Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

Summary judgment is particularly appropriate in cases involving the qualified immunity defense because qualified immunity exists to protect government officials not only from liability, but also from trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Fourth Circuit has also strongly announced a preference to resolve civil rights cases involving qualified immunity through dismissal short of trial. *Pittman v. Nelms*, 87 F.3d 116, 119 (4th Cir. 1996). The court will thoroughly address each of Plaintiff's Objections in turn.

**A. False Arrest as to Defendant Bash**

Plaintiff disagrees with the Magistrate Judge's findings "that there was *any* cause for the Defendants to impede him in *any* fashion prior to a warrantless search of his person, [personal] possessions and/or hotel room." (ECF No. 127 at 1 (emphasis in original).) Plaintiff's argument is essentially that Bash used a third party's arrest warrant as an improper justification to detain and search him. Furthermore, Plaintiff asserts that his eventual entering of an Alford plea "eighteen months after his arrest" does not necessarily mean that there was probable cause to arrest him. (*Id.* at 2.) Plaintiff maintains that mostly everything asserted by Bash amounts to "ex post facto fabrication." (*Id.*)

Bash asserts Plaintiff's cause of action for false arrest fails as a matter of law because there was probable cause to arrest Plaintiff. (ECF No. 106-1 at 3–4.) Furthermore, Bash maintains that Plaintiff's false arrest claim fails because Plaintiff's guilty pleas conclusively establish that Plaintiff's arrest was valid. (*Id.* at 4.) The Magistrate Judge agreed with Bash's position. (ECF No. 124 at 6.) After careful review, this court agrees with Bash's argument that Plaintiff's cause of action for false arrest fails as a matter of law because there was probable

cause sufficient to arrest Plaintiff.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  Probable cause exists if the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person . . . in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).  "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest."  (*Id.* at 36.)  "In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest."  *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996).  "Probable cause requires more than 'bare suspicion' but requires less than evidence necessary to convict."  *Porterfield v. Lott*, 146 F.3d 563, 569 (4th Cir. 1998) (internal citations omitted).

Probable cause will be found when "the facts and circumstances within an officer's knowledge – or of which he possesses reasonably trustworthy information – are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed."  *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000).  "'Whether probable cause exists in a particular situation . . . always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'"  *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001) (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)).  A court's inquiry should be made based on the information actually possessed by the officer during the arrest or that was reasonably available to him at the

time of arrest, and "in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions."  *Pritchett*, 973 F.2d at 312.

In his Objections, Plaintiff relies on the above-cited language from *Rogers* and asserts that Defendants did not have probable cause to search him, and thus, to ultimately arrest him. (ECF No. 127 at 2.)  However, even under Plaintiff's version of the facts, he was arrested after Defendant officers found the following items: a syringe and small plastic baggies on Edwards, digital scales in a backpack, and a pill bottle containing heroine and methamphetamine in Plaintiff's possession. (ECF Nos. 1 at 9, 119-1 at 2–4.)  Also, Defendants were acting pursuant to an arrest warrant for Edwards (ECF Nos. 109-2, 109-5, 109-6) and were in pursuit of her when they came into contact with Plaintiff.  The court agrees with the Magistrate Judge that there was probable cause to arrest Plaintiff without an arrest warrant.  The officers were aware that Plaintiff was in contact with a known fugitive, that Plaintiff was in possession of narcotics, and that Plaintiff had the requisite materials on hand to distribute said narcotics.

Plaintiff contends that Defendants found evidence, including drugs, without a search warrant and without his consent. (ECF Nos. 1, 122.)  However, even assuming the validity of Plaintiff's arguments, the exclusionary rules or "fruit of the poisonous tree" arguments are not applicable in civil actions such as this, pursuant to § 1983.  *See, e.g., Ware v. James City Cnty., Virginia*, 652 F. Supp. 2d 693, 705 (E.D. Va. 2009), *aff'd sub. nom., Ware v. James City Cnty., Va.*, 380 F. App'x 274 (4th Cir. 2010) ("This argument fails because 'the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant.'") (citing *Townes v. City of New York*, 176 F.3d 138, 148–49 (2d Cir. 1999)); *Vaughn v. Whitfield*, No. 8:12-CV-2405-RMG, 2013 WL 5144751, at *19 (D.S.C. Sept. 12, 2013) (internal citations omitted) ("[E]ven if Defendants' conduct violated Plaintiff's Fourth Amendment right, Defendants are not automatically liable

under § 1983 or in tort for their subsequent decisions to place Plaintiff under arrest . . . there is no fruit of the poisonous tree doctrine in the § 1983 context that makes Defendants necessarily liable for seizure that came after a potentially unlawful search. The fruit of the poisonous tree doctrine is merely an extension of the exclusionary rule, and as such generally operates 'only in criminal trials.'"). Additionally, the Supreme Court has held that a "custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Riley v. California*, 134 S. Ct. 2473, 2483 (2014).

Accordingly, the court agrees with the Magistrate Judge's recommendation (ECF No. 124 at 8) and **REJECTS** Plaintiff's objection as to the false arrest cause of action against Bash.

**B. The Excessive Force Claim**

Plaintiff argues that, "although not every defendant was involved in putting physical restraints on the plaintiff . . . they can nonetheless be held jointly liable, under South Carolina law, because false arrest is considered a criminal assault of sorts." (ECF No. 127 at 3.) Plaintiff relies on the state's "hand of one, hand of all" doctrine. (*Id.*) Plaintiff is referring to a form of accomplice liability recognized in South Carolina where participants in a crime can be charged with some degree, or all, of the crime committed by another member of the group. To be chargeable, the separate crime must be "a probable or natural consequence" of the original crime. *State v. Thompson*, 647 S.E.2d 702, 704–05 (S.C. Ct. App. 2007).

Bash maintains that Plaintiff's causes of action against him for false arrest and excessive force fail as a matter of law because by the time Bash entered the hotel room, everyone was in custody, and Bash did not personally participate in either taking Plaintiff into custody or in arresting him. (ECF No. 106-1 at 2–3; *see also* ECF No. 106-2.) Additionally, Bash argues that

Plaintiff has failed to present evidence that Bash in any way participated in using excessive force, and Plaintiff has failed to present any evidence of an injury incurred as a result of the purported force used against him. (*Id.* at 5.)

Plaintiff concedes that Bash was not the arresting officer. (ECF No. 122 at 4.) However, Plaintiff maintains that Bash encouraged unlawful behavior. (*Id.*) Essentially, in Plaintiff's pleadings, he maintains that because Bash participated in the raid, he cannot escape liability. The Magistrate Judge disagreed. (ECF No. 124 at 9.) In Plaintiff's Objections, Plaintiff asserts the "hands of one, hands of all" doctrine, and argues that "this would extend to every actor who conspired to illegally raid the plaintiff's hotel room whether they personally 'cuffed' him or not." (ECF No. 127 at 3.)

The Magistrate Judge points out that Bash "correctly states that whether law enforcement officers used excessive force when making an arrest is analyzed under the Fourth Amendment and its 'reasonableness' standard." (ECF No. 124 at 9 (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).) The *Graham* Court held that the protections of the Fourth Amendment guarantee citizens the right "to be secure in their persons . . . against unreasonable . . . seizures." (*Id.* at 394.) Additionally, the court held that "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." (*Id.* at 396.)

As to Plaintiff's accomplice liability theory, Plaintiff's argument also fails. In order for there to be accomplice liability, there must be an underlying crime. *See State v. Condrey,* 562 S.E.2d 320, 325 (S.C. Ct. App. 2002) (quoting *State v. Langley,* 515 S.E.2d 98, 101 (S.C. 1999)). Since Plaintiff has not established that the officers have committed a crime, there can be no

accomplice liability for Bash. Lastly, despite Plaintiff's "hands of one, hands of all" allegation, Bash also correctly asserts that "[i]n order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted *personally* in deprivation of the plaintiff's rights.'" *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985) (citation omitted) (emphasis added); *see also Jane D. v. Seurynck*, 473 F. Supp. 860, 863 (D.S.C. 1978).

Accordingly, since Plaintiff concedes that Bash did not personally participate in taking Plaintiff into custody or charging him, Bash cannot be liable under § 1983. Plaintiff also fails to allege that Bash used any force on him. The court therefore **REJECTS** Plaintiff's argument as to the excessive force claim against Bash.

## C. Qualified Immunity

Plaintiff objects insofar as qualified immunity would extend "to *any* of the Defendants." (ECF No. 127 at 5 (emphasis in original).) Plaintiff asserts that qualified immunity should not attach because [the doctrine] "does not exist to shield officials who knowingly or willingly break the law, nor the grossly incompetent.' (*Id.*) Because the court finds that Bash is a government official who did not violate any clearly established constitutional rights of Plaintiff, Bash is entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (Under qualified immunity doctrine, "government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which reasonable a person should have known."); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (Qualified immunity "provides ample protection to all but the plainly incompetent of those who knowingly violate the law"). Therefore, even under Plaintiff's version of the facts, no allegations or evidence demonstrate that Bash used an unjustified amount of force on Plaintiff during his arrest. As a result, the court **REJECTS**

Plaintiff's objection as to granting qualified immunity to Bash.

Defendants maintain the court should grant their Motion for Summary Judgment because they are also shielded by qualified immunity. (ECF Nos. 106-1 at 5–6, 109-1 at 14–16.) Considering the facts alleged, taken in the light most favorable to Plaintiff, the Magistrate Judge agreed with Defendants. (ECF No. 124 at 16.) The record before the court shows that Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. As noted above, Defendants did not transgress any statutory or constitutional rights of Plaintiff. The Magistrate Judge recommends that the Defendants be granted qualified immunity. The court agrees.

Accordingly, the court **REJECTS** Plaintiff's objection as to granting qualified immunity to Defendants.

### D. Sovereign Immunity/Official Capacity

Plaintiff argues that none of the Defendants are entitled to sovereign immunity because at the time of his arrest, Plaintiff was not a resident of South Carolina. (ECF No. 127 at 5.) Plaintiff's argument relies on the assumption that he must be a resident of South Carolina for sovereign immunity to attach to Defendants and thus protect them from suit in federal court. However, this is simply not true. The first instance of the issue of whether a citizen of one state could sue a different/another state in federal court was presented in August of 1792, when two citizens of South Carolina brought suit against the State of Georgia. *Chisholm v. Georgia*, 2 U.S. 419 (1793). In February of 1793, the court issued its short-lived opinion holding that a State is amenable to suit by a citizen of another state. *See id.* at 466. As a direct result of that decision, five years later, President John Adams officially announced the Eleventh Amendment. In *Hollingsworth v. Virginia*, 3 U.S. 378 (1798), the Supreme Court held that every pending action

brought under *Chisholm* had to be dismissed because of the amendment's adoption. *Id.* at 382. Unchanged since its creation, the Eleventh Amendment reads as follows: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States *by Citizens of another State*, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. (emphasis added). Therefore, because Plaintiff is a resident of Arizona and not South Carolina as he so claims, Defendants are permitted to invoke the protection of sovereign immunity. Furthermore, had Plaintiff been a resident of South Carolina, sovereign immunity would still be proper. While the Eleventh Amendment's text does not mention suits brought against a state by its own citizens, the Supreme Court has ruled that the amendment reflects a broader principle of sovereign immunity that derives not from the text of the Eleventh Amendment, but from the Constitution itself. *See Hans v. Louisiana*, 134 U.S. 1, 15–16 (1890).

The United States Supreme Court has long held that the Eleventh Amendment precludes suits against agents and instrumentalities of the state. (ECF No. 124 at 17 (citing *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001)).) "Because the officer Defendants were agents or employees of the County of Greenville when acting in their official capacities, they are not 'persons' within the meaning of 42 U.S.C. § 1983." (*Id.* (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ([N]either a state nor its officials acting in their official capacities are 'persons' under § 1983.")).) The Eleventh Amendment prohibits non-consenting states from being sued in federal or state court by private individuals. *Bd. of Trustees of the Univ. of Ala. v. Garrett,* 531 U.S. 356, 363 (2001). "The State of South Carolina has not consented to be sued in this case." (ECF No. 124 at 18 (citing S.C. Code Ann. § 15-78-20(e) (1976)).) Defendants, in their official capacities, are immune from suit under the Eleventh

14

Amendment. The Magistrate Judge recommended that Plaintiff's claim against Defendants in their official capacities be dismissed. (ECF No. 124 at 18.) Upon its own independent review of the pleadings, the court agrees.

Accordingly, the court **REJECTS** Plaintiff's objection as to granting Defendants' sovereign immunity/official capacity defense.

**E. Greenville County Defendants (False Arrest Arguments)**

Plaintiff reincorporates his earlier argument regarding false arrest pertaining to Bash and applies it to Greenville County Defendants. (ECF No. 127 at 6–7.) Greenville County Defendants assert Plaintiff's cause of action for false arrest fails as a matter of law because the officers had probable cause to arrest Plaintiff. (ECF No. 109-1 at 7–9.) The Magistrate Judge agreed. (ECF No. 124 at 9–10.) Based on the reasoning set forth above,[3] the court **REJECTS** Plaintiff's objection as to the Magistrate Judge's recommendation regarding the claim of false arrest asserted against Greenville County Defendants.

**F. Greenville County Defendants (Excessive Force Arguments)**

Plaintiff reemphasizes his earlier "hands of one, hands of all" theory of liability and as such claims that Greenville County Defendants should all be liable for Hawkins' actions. (ECF No. 127 at 7.) Greenville County Defendants argue that summary judgment should be granted on Plaintiff's excessive force claim because the amount of force exercised by Hawkins was reasonable under the circumstances. (ECF No. 109-1 at 11–14.) Furthermore, Greenville County Defendants maintain that Plaintiff has failed to demonstrate that he suffered any injury during his arrest or the encounter in room 107 at La Quinta Inn. (*Id.* at 13.)

In his Complaint, Plaintiff asserts the following facts that could give rise to an excessive

---

[3] The court has already addressed Plaintiff's cause of action for false arrest above. *See supra* section (A)(1)(a).

force violation: Plaintiff's confrontation by officers when he attempted to exit the La Quinta Inn hotel room; the use of "phrases" and "slurs" shouted at him upon his exit; an officer's use of handcuffs on Plaintiff as well as Plaintiff being "draped" over a hotel bed; and an officer's use of a "double-cuff" on Plaintiff. (*See, e.g.*, ECF No. 37-1 at 7 ¶ 23–8 ¶ 25.) The Magistrate Judge found that the amount of force alleged was reasonable under the circumstances. (ECF No. 124 at 13.)

*Graham v. Connor* establishes that claims against law enforcement for excessive force in the course of an arrest, investigatory stop or other "seizure" of a person are properly analyzed under the Fourth Amendment's objective "reasonableness" standard. 490 U.S. at 395. In *Graham*, the Supreme Court recognized "that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. at 396. Further, the Court held that there is not a precise mechanical application of the standard, but "its proper application requires careful attention to the facts and circumstances of each particular case." *Id*. Furthermore, the Court instructed that an officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. Guided by the authority in *Graham*, the Magistrate Judge examined the totality of the circumstances and the uncontested facts, viewed in the light most favorable to Plaintiff, to determine whether Greenville County Defendants' use of force was reasonable and determined that it was. This court, after performing its own independent review of the uncontested facts and pleadings, also concludes that the amount of force used by Hawkins was reasonable under the circumstances.

Hawkins was aware that there was a wanted fugitive in the room. (ECF No. 1 at 6.) Hawkins was also made aware that there was an unknown male in the room and that these

persons had narcotics with them. (ECF No. 109-1 at 3.) Furthermore, when the door opened to room 107 at the La Quinta Inn where Plaintiff and Edwards were staying, Edwards immediately began screaming and acting erratically. (*Id.* at 4 (citing ECF No. 109-2 at 4 ¶ 8).) Hawkins reasonably perceived that Edwards and Plaintiff posed a threat to the safety of both the officers and the public. Accordingly, Hawkins "made the split-second decision to point his gun at the Plaintiff, direct him to a nearby bed, and place him in handcuffs for the safety of the officers as they moved to confront Edwards." (*Id.* at 5 (citing ECF No. 109-2 at 4 ¶¶ 8, 9).) Once the chaos of the room subsided, Plaintiff was "double-cuffed" (ECF No. 1 at 10), which allowed Plaintiff greater freedom of movement, indicating that Hawkin's use of force did not extend past the amount of force needed to control the situation, nor past the point when a reasonable threat of harm existed. Without the underlying actions of Hawkins being unlawful, no accomplice liability extends to Greenville County Defendants. For the foregoing reasons, the court **REJECTS** Plaintiff's objection as to the Magistrate Judge's recommendation regarding the excessive force cause of action against Greenville County Defendants.

**G. Defendant Hawkins' Claim to Have Been Acting in the Interest of Public and Personal Safety**

Plaintiff argues, "[t]here is not one iota of evidence . . . that Edwards or the Plaintiff were armed, dangerous, threatening, or whatever else." (ECF No. 127 at 7–8.) The court reincorporates its findings as to Hawkins in section "F" above by reference.

It is undisputed that Plaintiff was found in a room with Edwards, a wanted fugitive. (ECF Nos. 109-2, 109-3, 109-5, 109-6.) Furthermore, evidence demonstrates that Hawkins reasonably perceived that Edwards and Plaintiff posed a threat to officer safety and the public's safety. (ECF Nos. 109-2, 123-4.) Moreover, evidence demonstrates that the amount of force used was reasonable in order to apprehend Edwards, and ultimately Plaintiff. In an affidavit

17

submitted with Greenville County Defendants' Motion for Summary Judgment, Hawkins avers that he "un-holstered [his] service weapon . . . based on [his] experience and training, that Edwards, who had been evading law enforcement's efforts to arrest her on two separate warrants, one of which was from out-of-state, would react badly when she learned that police were outside her door." (ECF No. 109-2 at 3 ¶ 7.) Additionally, Hawkins avers that "[r]elegating the Plaintiff and the fugitive to this room minimized the chance that a violent altercation would occur in the motel's common area, jeopardizing the safety of motel patrons and members of the public who might happen to be in the area." (*Id*.) Furthermore, Hawkins asserts that he handcuffed Plaintiff in order to "maintain the status quo." (*Id*. at 4 ¶ 9.) According to Hawkins, Plaintiff indicated that he was not injured once order was restored to the motel room. (*Id*. at ¶ 10.)

Under the objective reasonableness test, the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force. The officer's use, or presentment of a gun, in this situation was reasonable. *See Turmon v. Jordan*, 405 F.3d 202, 207 (4th Cir. 2005) (quoting *United States v. Sinclair*, 983 F.2d 598, 602 (4th Cir. 1993) ("'[A]pproaching a suspect with [a] drawn weapon[] is an extraordinary measure, but his level of intrusion can be justified 'as reasonable means of neutralizing potential dangers to police and innocent bystanders.'")); *United States v. Seni*, 662 F.2d 277, 283 (4th Cir. 1981) (finding that drawing a gun was a reasonable safety precaution where officers have reasonable suspicion of criminal activity). Additionally, the officer's use of handcuffs to detain Plaintiff was also reasonable under the circumstances. *See, e.g., Redding v. Boulware*, 501 F. App'x 238, 242 (4th Cir. 2012) (holding that the law enforcement officers did not use excessive force in putting handcuffs on the arrestee); *Young v. Prince George's Cnty., Maryland*, 355 F.3d 751, 755 (4th Cir. 2004) (internal citation omitted) ("We have also held that an officer may

handcuff a suspect when reasonably necessary to maintain the status quo and protect officer safety during an investigative stop."); *Brown v. Gilmore*, 278 F.3d 362, 369–70 (4th Cir. 2002) ("If courts refused to permit the use of proportionate force in these circumstances, we would be inviting any suspect who is unhappy about an arrest to resist in that arrest in hopes that the officers will simply desist rather than risk liability.") The Magistrate Judge found, and this court agrees, that Plaintiff has still failed to present evidence that officers acted with an unreasonable amount of force given the totality of the circumstances.

Accordingly, the court **REJECTS** Plaintiff's objection regarding Hawkins' claim to have been acting in the interest of public and personal safety.

## H. The Use of Racial Slurs

To the extent Plaintiff brings a cause of action for excessive force based on the officers' threats or slurs, this allegation fails as a matter of law because use of abusive language alone is not a basis for a civil rights action. *Faltas v. South Carolina*, C/A No. 3:11-3077-TLW-SVH, 2012 WL 988105, at *6 (D.S.C. Jan. 27, 2012), *report and recommendation adopted*, No. 3:11-3077-TLW, 2012 WL 988083, at *1 (D.S.C. Mar. 22, 2012), *aff'd sub. nom., Assa'ad-Faltas v. South Carolina*, 489 F. App'x 720, 720 (4th Cir. 2012). Finally, as mentioned by Defendants, Plaintiff has failed to offer any proof that he suffered an injury because of excessive force. (ECF No. 106-1 at 5; ECF No. 109-1 at 13 (citing *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) ("The extent of the plaintiff's injury is also a relevant consideration.")).)

Therefore, based on the evidence before the court and the case law on use of excessive force, the Magistrate Judge recommended that the court grant Defendants' Motion for Summary Judgment regarding Plaintiff's cause of action for excessive force. This court agrees.

Accordingly, this court **REJECTS** Plaintiff's objection regarding the use of racial slurs.

### III. CONCLUSION

For the foregoing reasons, the court **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 124) and hereby **REJECTS** Plaintiff's Objections (ECF No. 127). The court hereby **GRANTS** Bash's Motion for Summary Judgment (ECF No. 106) and Greenville County Defendants' Motion for Summary Judgment (ECF No. 109), **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 113), and **DISMISSES** this action.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

July 24, 2015
Columbia, South Carolina